UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
*ELECTRONICALLY FILED*

| | |
|---|---|
| MELISSA A. MORRIS ) | Civil Action No.  5:16-CV-00129-TBR |
| ) | |
|     PLAINTIFF ) | |
| ) | |
| v. ) | |
| ) | |
| ZURICH AMERICAN INSURANCE ) | |
| COMPANY *ET AL.* ) | |
| ) | |
|     DEFENDANTS ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

\*\*\*\*\*

This is Zurich American Insurance Company and Zurich American Insurance Company of Illinois's memorandum in support of their motion for summary judgment.

## I.  FACTS

### A. INTRODUCTION

This is an alleged insurance bad-faith case. It arises out of a motor-vehicle accident and the personal-injury action that resulted from the accident. The plaintiff is Melissa Morris. The two defendants are Zurich American Insurance Company and Zurich American Insurance Company of Illinois.

## B. MORRIS'S UNDERLYING PERSONAL-INJURY ACTION

The motor-vehicle accident at the bottom of this case happened in Louisville. The accident involved vehicles driven by Ms. Morris and Edgar Heinkel. Heinkel was employed by a ServiceMaster company at the time of the accident.[1] As a result of Heinkel's employment, he was insured under a commercial auto policy that defendant Zurich American Insurance Company issued to The ServiceMaster Company.[2] The policy number was BAP 2938657-03.[3]

BAP 2938657-03 had a $5,000,000 liability limit and a $3,000,000 liability deductible.[4] The deductible effectively made The ServiceMaster Company self-insured up to $3,000,000.[5] As it did, Zurich American was effectively The ServiceMaster Company's third-party claims handler for claims of $3,000,000 or less. And Ms. Morris's settlement demands never exceeded $3,000,000.[6]

---

[1]    Affidavit of Laura Stengl, p. 2 (attached as Exhibit 1).

[2]    Laura Stengl, p. 2; Common Policy Declarations (attached as Exhibit 2); Deductible Endorsement (attached as Exhibit 3).

[3]    Laura Stengl, p. 2; Common Policy Declarations; Deductible Endorsement.

[4]    Laura Stengl, p. 2; Common Policy Declarations; Deductible Endorsement.

[5]    *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 95 (Ky. 2000) (the Kentucky Supreme Court held that an insured with $250,000 deductible was effectively self-insured against a $71,000 claim).

[6]    *Id.*

### C. ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS

Zurich American Insurance Company of Illinois, as distinguished from Zurich American Insurance Company, didn't issue BAP 2938657-03. Zurich American Insurance Company of Illinois didn't insure The ServiceMaster Company.[7] That's undisputed.

### II. ARGUMENT

**A. TO MAKE OUT HER BAD-FAITH CLAIMS AGAINST ZURICH AMERICAN INSURANCE COMPANY, MORRIS MUST BE ABLE TO PROVE THAT ZURICH AMERICAN WAS OBLIGATED TO PAY HER UNDERLYING TORT CLAIMS AGAINST EDGAR HEINKEL AND HIS EMPLOYER. IN LIGHT OF BAP 2938657-03'S $3,000,000 DEDUCTIBLE, MORRIS CAN'T POSSIBLY DO THAT. THEREFORE, HER BAD-FAITH ACTION AGAINST ZURICH AMERICAN INSURANCE COMPANY FAILS AS A MATTER OF LAW AND SHOULD BE DISMISSED.**

In *Daugherty v. American Express Company*, the Court examined Kentucky bad-faith law and held that "in the absence of a contractual obligation to pay [a tort claim], there can be no action for bad faith."[8] The Court held likewise in *Madison v. Nationwide Mutual Ins. Co.*[9] In deciding *Daugherty* and *Madison*, the Court relied heavily on *Davidson v. American Freightways, Inc.* Therefore, we'll take a look at *Davidson*.

---

[7]     Common Policy Declarations; Deductible Endorsement.

[8]     *Daugherty v. American Express Company*, 2010 WL 4683758 (W.D. Ky.) (attached as Exhibit 4).

[9]     *Madison v. Nationwide Mutual Ins. Co.*, 2012 WL 692598 (W.D. Ky.) (attached as Exhibit 5).

*Davidson*, like this case, was a bad-faith case that arose out of an auto accident.[10] The plaintiffs were the Davidsons. The defendant was American Freightways. After the Davidsons and American Freightways resolved the Davidsons' auto-accident claims for $71,143.27, the Davidsons sued American Freightways for bad faith.[11]

American Freightways had an auto policy with Protective Insurance Company that contained a $250,000 deductible.[12] The deductible made American Freightways self-insured against the plaintiffs' auto-accident claims. As a result, American Freightways resolved the plaintiffs' auto-accident claims on its own.[13]

Turning to the plaintiffs' bad-faith claims, American Freightways moved the Jefferson Circuit Court for summary judgment on those claims. The circuit court granted the motion and the Kentucky Court of Appeals affirmed. The Kentucky Supreme Court granted review and held that the plaintiffs' bad-faith claims failed because "the UCSPA and the tort of 'bad faith' apply only to those persons or entities (and their agents) who are "engaged . . . in the business of entering into contracts of insurance," and American Freightways wasn't in the insurance business.[14]

Turning back to this case, Zurich American is analogous to American Freightways' insurer Protective Insurance Company and The ServiceMaster Company is analogous to American Freightways. Zurich American is analogous to Protective Insurance because Zurich American was insulated from paying Melissa Morris's tort

---

[10] *Davidson*, 25 S.W.3d at 95.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 102.

4

claims by The ServiceMaster Company's $3,000,000 deductible. The ServiceMaster Company is analogous to American Freightways because its $3,000,000 deductible made it responsible for paying Melissa Morris's tort claims with its own money.[15]

Although the parties in *Davidson* are analogous to the parties here, the issue in *Davidson* was different from the issue here. In *Davidson*, the issue was whether the plaintiffs could hold American Freightways (a non-insurer) liable for bad faith because its deductible made it responsible for paying the Davidsons' underlying auto-accident claims. Here, the issue is whether Morris can hold Zurich American liable for bad faith even though The ServiceMaster Company's deductible insulated Zurich American from ever having to pay Morris's underlying tort claim. Despite these differing issues, the answer to this case is in *Davidson.* Thus, we'll look at *Davidson* more closely.

The *Davidson* court began its bad-faith analysis with *Wittmer v. Jones.* The court explained that *Wittmer* is Kentucky's leading bad-faith case. It further explained that *Wittmer* "gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon common law theory or a statutory violation."[16] According to the *Davidson* court, *Wittmer* identified the three elements of a bad-faith claims "as follows: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew

---

[15] *See* Laura Stengl, p. 2; Common Policy Declarations; Deductible Endorsement.

[16] *Davidson*, 25 S.W.3d at 100.

5

there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed."[17]

Of *Wittmer*'s three elements, the dispositive element here is the first. Under that element, a bad-faith plaintiff must be able to prove that its defendant was obligated to pay her underlying claim.[18] In the *Davidson* court's words:

> The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is contractually obligated to pay. Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute.[19]

In this case, it's undisputed that The ServiceMaster Company's $3,000,000 deductible insulated Zurich American from ever becoming obligated to pay Morris's underlying tort claims against Edgar Heinkel and his employer. As that's so, Morris's bad-faith claims fail as a matter of law under *Davidson.*

We could stop here. The Court doesn't need further argument or analysis to decide this motion in Zurich American's favor. But out of an abundance of caution, we'll provide a bit more of both. We'll start with *Delamar v. Mogan.*[20]

In *Delamar*, Andy Delamar's restaurant in Clay, Kentucky burned down. Delamar filed a claim with his insurer Global Indemnity Group.[21] Global Indemnity assigned the claim to adjuster Linda Mogan of Cunningham Lindsey.[22]

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] 966 F. Supp.2d 755 (W.D. Ky. 2013).

[21] *Id.* at 756.

6

After some investigation, Global Indemnity denied Delamar's claim. The denial prompted him to sue Global Indemnity, Ms. Mogan, and Cunningham Lindsey for bad faith.[23] The defendants removed Delamar's action to this Court and Delamar moved to remand. In opposing Delamar's motion, the defendants argued that Ms. Mogan was fraudulently joined because Delamar could not properly assert a bad-faith claim against her. The defendants relied on *Davidson.*

The Court agreed that *Davidson* defeated Delamar's bad-faith claims against Mogan because she could never have been obligated to pay Delamar's underlying insurance claim. The Court explained that "[s]ince Mogan did not have a contractual obligation to pay the claim or any other contractual relationship with the Plaintiff, there is no 'reasonable basis' to suggest that Kentucky would hold Mogan individually liable for bad faith under either the common law or statutory scheme."[24] The Court dismissed Delamar's bad-faith claims against Mogan and denied his motion to remand.

The next case we'll look at is *Prout v. PRG Real Estate Management, Inc.*[25] *Prout* is from the Eastern District of Kentucky. In *Prout*, Mary Prout sued PRG Real Estate over a fall. Prout also sued ESIS, Inc. for bad faith. Prout alleged that ESIS

---

[22] *Id.*

[23] *Id.* at 757.

[24] *Id.* at 758.

[25] 51 F.Supp. 3d 702 (E.D. Ky. 2014).

was PRG's insurer. But that wasn't the case. ESIS was a third-party administrator. It administered PRG's self-insurance plan.[26]

When ESIS moved for summary judgment on Prout's bad-faith claim, it relied on *Davidson*.[27] The court agreed that *Davidson* defeated the claim because ESIS never could have been obligated to pay Prout's underlying tort claim. In the *Prout* court's words:

> Plaintiff averred that ESIS was PRG's insurer. Both ESIS and PRG contend, however, that ESIS was merely a third-party claims administrator for PRG's self-insurance program. . . . ESIS filed in the record a "risk management services agreement." . . . The document outlines the terms of Defendants' agreement, making clear that claim payments were the obligation of PRG, not ESIS. Plaintiff has failed to dispute the authenticity of the contract or to identify any evidence indicating that ESIS was actually an insurer. . . .
>
> [U]nder Kentucky law, a bad faith claim requires a contractual obligation to pay a claim under an insurance policy. . . . Defendants' risk management services agreement demonstrates that ESIS, as PRG's claims administrator, had no contractual obligation to make payment to Plaintiff. Additionally, even if the Court viewed the issue in light of ESIS's agency relationship with PRG, any bad faith claim is barred because PRG is not in the business of entering into contracts for insurance. Because there is no genuine question as to whether a contractual obligation to pay existed, ESIS is entitled to summary judgment.[28]

The bottom line in *Prout* was the same as the bottom line in *Delamar*. Prout's bad-faith claims failed on *Wittmer*'s first element because her defendant wasn't obligated to pay her underlying tort claims.

---

[26]  *Id.* at 704.

[27]  *Id.* at 705.

[28]  *Id.*

The last case we'll look at it is *Madison v. Nationwide Mut. Ins. Co.*[29] We mentioned *Madison* briefly at the beginning of this argument. The Court decided *Madison* in 2012. The plaintiff in *Madison* was John Madison. Madison sued Nationwide and Nationwide adjuster Charlie Stevens for bad faith. When Nationwide removed the case to this Court, it argued that Stevens was fraudulently joined.[30] The Court agreed.

Relying on *Davidson*, the Court explained that "there is no doubt that Madison is barred from bringing a bad faith claim against an insurance adjuster in the present case" because the adjuster "was under no contractual obligation to pay the [plaintiff's] claims; thus there exists no statutory or common law basis for a bad faith claim against [him]."[31] The Court further explained that "[the] Plaintiff ignores the Kentucky Supreme Court's statement [in *Davidson*] that there must be a contractual obligation. Absent a contractual obligation between the parties, there can be no cause of action for bad faith. Because no contractual obligation exists between Madison and the insurance adjuster in the present case, Madison has fraudulently joined Stevens and may not maintain a bad faith cause of action against him."[32]

Turning back to this case, we've attached the Declarations Page and Deductible Endorsement from BAP 2938657-03. The two documents show that The

---

[29] 2012 WL 692598 (W.D. Ky.).

[30] *Id.* at *1.

[31] *Id.* at *2 (quoting *Davidson*, 25 S.W.3d at 100).

[32] *Id.*

ServiceMaster Company had a $5,000,000 liability limit and a $3,000,000 deductible under BAP 2938657-03.

We've also attached an affidavit from Laura Stengl. The affidavit shows that Morris's demands in her underlying tort action against Edgar Heinkel and his employer were always within The ServiceMaster Company's $3,000,000 deductible. As that's the case, Zurich American never had an obligation to pay Morris's underlying tort claims, which defeats her bad-faith claims under *Davidson*, *Delamar*, *Prout*, *Daugherty*, and *Madison*.

**B. ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS DIDN'T ISSUE BAP 2938657-03. AS IT DIDN'T, MORRIS CAN'T POSSIBLY PROVE THAT ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS WAS OBLIGATED TO PAY HER UNDERLYING TORT CLAIMS. THEREFORE, HER BAD-FAITH CLAIMS AGAINST ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED.**

BAP 2938657-03's Declarations show that Zurich American Insurance Company (not Zurich American Insurance Company of Illinois) issued BAP 2938657-03. Therefore, Zurich American Insurance Company of Illinois was never obligated to pay Morris's underlying tort claims and it is entitled to summary judgment on Morris's bad-faith action.

10

**C. EVEN ASSUMING THAT ZURICH AMERICAN WAS OBLIGATED TO PAY MORRIS'S UNDERLYING TORT CLAIMS, MORRIS STILL COULD NOT MEET *WITTMER V. JONES*'S THREE ELEMENTS. THEREFORE, THE COURT HAS OTHER GROUNDS UPON WHICH TO DISMISS MORRIS'S BAD-FAITH ACTION.**

As we explained above, *Wittmer v. Jones* is Kentucky's leading bad-faith case.[33] *Wittmer* applies to "all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon a common-law theory or a statutory violation."[34] Under *Wittmer*, Morris must be able to prove: (1) that Zurich American was obligated to pay her tort claims against Heinkel and his employer before they were paid; (2) that Zurich American lacked a reasonable basis in law or fact for not paying her tort claims against Heinkel and his employer before they were paid; and (3) that Zurich American recklessly refused to pay her tort claims against Heinkel and his employer before they were paid.[35]

*(1) Even if Zurich American was obligated to pay Morris's underlying tort claims, she couldn't satisfy Wittmer's first element.*

*Wittmer*'s first element is that an insurer must have been obligated to pay a bad-faith plaintiff's underlying "claim." Assuming solely for argument's sake that Zurich American was obligated to pay Morris's tort claims, this element would require Morris to prove that Zurich American should have paid the claims before they were paid. Morris can't possibly meet this element because Kentucky insurers are only

---

[33] *Davidson*, 25 S.W.3d at 99-100.

[34] *Id.*

[35] *Wittmer v. Jones,* 864 S.W.2d 885, 890 (Ky. 1993).

obligated to pay claims when liability is "beyond dispute." Here, Morris's tort claims against Edgar Heinkel and his employer were always genuinely disputed.[36]

*Coomer v. Phelps* is the leading case when it comes to Kentucky's beyond-dispute rule. *Coomer* held that Kentucky law only requires insurers to pay claims "for which liability is beyond dispute."[37] Although *Coomer* established the beyond-dispute rule, the opinion didn't analyze the rule. The first courts to analyze the rule were two federal courts.[38] The Sixth Circuit did so in *Philadelphia Indemnity Ins. Co. v. Youth Alive, Inc.* and the U.S. District Court for Eastern District of Kentucky did so in *Lee v. Medical Protective Co.*[39] Both federal courts held that the beyond-dispute rule gives Kentucky insurers the right to litigate claims that are genuinely disputed without making settlement offers.[40]

The Kentucky Court of Appeals has also analyzed *Coomer*'s beyond-dispute rule. It did so in *Hollaway v. Direct Gen. Ins. Co.*[41] The *Hollaway* court explained that, under the beyond-dispute rule, unless liability for a tort claim is beyond

---

[36] *See* Laura Stengl, p. 2; Release (Exhibit 6) (We will file a motion to file this Exhibit under seal. A "placeholder" is attached.).

[37] *Coomer v. Phelps*, 172 S.W.3d 389, 394 (Ky. 2005).

[38] *Philadelphia Indemnity Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 650 (6th Cir. 2013); *Lee v. Medical Protective Co.*, 904 F. Supp. 2d 648, 656 (E.D. Ky. 2012).

[39] *Youth Alive, Inc.*, 732 F.3d at 650; *Lee*, 904 F. Supp. 2d at 656.

[40] *Youth Alive, Inc.*, 732 F.3d at 650; *Lee*, 904 F. Supp. 2d at 656.

[41] *Hollaway v. Direct Gen. Ins. Co.*, 2014 Ky. App. LEXIS 1044 (affirmed by *Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 738 (Ky. 2016) (attached as Exhibit 7).

dispute, an insurer is entitled to litigate the claim without making a settlement offer.[42] The *Hollaway* court further explained that the beyond-dispute rule derives from *Wittmer v. Jones*'s three elements. In the court's words:

> [T]he common thread running through . . . *Wittmer*['s] elements is that the insurer has tort liability for bad faith if, and only if, its liability for paying the claim in question was "beyond dispute." Absent that, an insurer has a right to defend the case, without making any settlement offer at all.[43]

After explaining that the beyond-dispute rule comes from *Wittmer*, the *Hollaway* court applied the rule to affirm the dismissal of a bad-faith claim. The court affirmed because the plaintiff's underlying tort claims were genuinely disputed as to both liability and damages. The Kentucky Supreme Court affirmed.[44] The Supreme Court affirmed because it agreed that the insurer in the case had no duty to pay the plaintiff's underlying tort claims because the claims were genuinely disputed as to both liability and damages.[45]

Turning back to this case, Ms. Morris filed interrogatory answers in March 2012 claiming $1,900,000 in damages.[46] Morris ultimately accepted less than ten percent of that amount to settle her tort claims.[47] By accepting approximately 90% less

---

[42]   *Id.* at *17

[43]   *Id.*

[44]   *Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 738 (Ky. 2016).

[45]   *Id.* at 738-39.

[46]   Plaintiff's Responses to Defendant's First Set of Interrogatories, pp. 17-18 (attached as Exhibit 8).

[47]   Laura Stengl, p. 2; Release (We will file a motion to file this Exhibit under seal.)

than what she once claimed in damages, Morris proved that her tort claims were genuinely disputed and, therefore, that there was no obligation to pay them before they were paid. That defeats her bad-faith claims under *Wittmer*'s first element.

### (2) Even if Zurich American was obligated to pay Morris's underlying tort claims, she couldn't satisfy Wittmer's second element.

Under *Wittmer*'s second element, Morris has to prove that Zurich American lacked a fairly debatable basis for refusing to pay her claims against Heinkel and his employer before they were paid. As the Kentucky Court of Appeals explained, "[i]f a claim is 'fairly debatable,' the insurer is entitled to debate that claim regardless of whether the debate concerns a matter of fact or one of law."[48]

In this case, even if we assume that Zurich American was obligated to pay Morris's tort claims, the operative question under *Wittmer*'s second element would be whether there was a fairly debatable basis for refusing to pay the claims before they were paid. The answer is "yes." Morris filed interrogatory answers in March 2012 claiming $1,900,000 in damages.[49] In light of the fact that Morris later accepted less than ten percent of that amount to settle her claims, the claims were fairly debatable and genuinely disputed until settled.[50] On top of that, there is relevant language in the

---

[48] *Empire Fire and Marine Ins. Co. v. Simpsonville Wrecker Service, Inc.*, 880 S.W.2d 886, 889-90 (Ky. App. 1994).

[49] Plaintiff's Responses to Defendant's First Set of Interrogatories, pp. 17-18.

[50] Laura Stengl, p. 1; Release (We will file a motion to file this Exhibit under seal.)

14

release regarding the disputed nature of Ms. Morris's claims.[51] These things defeat Morris's bad-faith claims under *Wittmer*'s second element.

> **(3) *Even if Zurich American was obligated to pay Morris's underlying tort claims, she couldn't satisfy Wittmer's third element.***

Under *Wittmer*'s third element, Morris has to prove that Zurich American acted intentionally or with reckless disregard of her rights in refusing to pay her tort claims before they were paid. In light of Morris's $1,900,000 demand, her settling for less than ten percent of that amount, and the relevant language in the release, Morris can't possibly meet this standard.[52] These facts show that Morris's claims were genuinely disputed until settled. As they were, it could not have been reckless to pay the claims when they were paid.

### III. CONCLUSION

Neither Zurich American Insurance Company nor Zurich American Insurance Company of Illinois were ever obligated to pay Melissa Morris's tort claims against Edgar Heinkel and his employer. Therefore, Morris's bad-faith claims against them fail as a matter of law and should be dismissed.

Furthermore, even if Zurich American Insurance Company was obligated to pay Morris's tort claims, Morris couldn't meet *Wittmer*'s elements because her tort claims were fairly debatable/genuinely disputed until settled.

---

[51] Release (We will file a motion to file this Exhibit under seal.)

[52] We will file a motion to file the Release under seal.

BOEHL STOPHER & GRAVES, LLP

/s/ Robert E. Stopher
Robert E. Stopher
Robert D. Bobrow
400 West Market Street, Suite 2300
Louisville, KY 40202
Phone: (502) 589-5980
Fax: (502) 561-9400
E-mail: rstopher@bsg-law.com
       rbobrow@bsg-law.com
COUNSEL FOR DEFENDANTS, ZURICH AMERICAN INSURANCE COMPANY AND ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS

CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February 2018 I electronically filed the foregoing with the clerk of the court by using the CM/ECF system and sent a copy by USPS Express Mail to the following:

Ms. Melissa Morris
NASHVILLE VANGUARD LAW, PLLC
404 James Robertson Pkwy, Suite 1619
Parkway Towers Building
Nashville, TN 372198

/s/ Robert E. Stopher
Robert E. Stopher
Robert D. Bobrow
BOEHL STOPHER & GRAVES, LLP
400 West Market Street, Suite 2300
Louisville, KY 40202
Phone: (502) 589-5980
Fax: (502) 561-9400
rstopher@bsg-law.com
rbobrow@bsg-law.com