UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

|  |  |  |
|---|---|---|
| MELISSA A. MORRIS | ) | Civil Action No. 5:16-CV-00129-TBR |
|  | ) |  |
| PLAINTIFF | ) |  |
|  | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| ZURICH AMERICAN INSURANCE | ) |  |
| COMPANY *ET AL.* | ) |  |
|  | ) |  |
| DEFENDANTS | ) |  |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Melissa Morris, and respectfully submits this Memorandum of Law in support of her contemporaneously filed Objection to Defendant's motion for summary judgment and attached exhibits.  Plaintiff states as follows:

### PRELIMINARY STATEMENT

This is an insurance bad faith case pursuant to violations of Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-230, violations of the Kentucky Administrative Regulations (KAR) 806 KAR 12:095 unfair claims settlement practices for property and casualty insurance, and violations of the Kentucky statute regarding the time for payment of insurance claims, KRS 304.12-235.  This case stems from Zurich's handling of Ms. Morris's bodily injury claim from a September 18, 2008 motor-vehicle accident as the insurer.  Morris filed a civil action in Jefferson Circuit Court in Kentucky state court on September 19, 2011 against insured Edward Heinkel and ultimately settled the personal injury claim with the

named parties on September 2, 2015. Zurich paid the claim under policy #BAP 2938657-03. Plaintiff subsequently filed the present case against insurer Zurich for bad faith settlement practices.

## STATEMENT OF FACTS

In 1984 the Kentucky legislature unanimously enacted into law the Unfair Claims Settlement Practices Act, KRS 304.12-230, to regulate how insurers must act with respect to claims made under insurance policies. Particularly, the UCSPA requires that insurers act reasonably promptly upon communications with respect to claims, adopt and implement reasonable standards for prompt investigation of claims, not refuse to pay claims without conducting a reasonable investigation, to attempt to effectuate prompt and fair settlement of claims when liability is clear, and to provide a reasonable explanation to the claimant when no offer of settlement is made. See KRS 304.12-230 (2), (3), (4), (6), and (14). The conduct exhibited by Zurich Insurance in this case was a flagrant disregard of all of these rules.

On September 18, 2008 Melissa Morris was driving on Billtown Rd in Jefferson County, Kentucky. At the same time, Edward Heinkel was in the course of his employment with Terminix, on his way home driving a Terminix company truck. Heinkel was driving too fast around a curve right before his left turn around a curve into his subdivision where he lived. He drove this route every day. When Heinkel's vehicle cleared the curve in the roadway, the vehicles in front of him were stopped or stopping for vehicles ahead which were turning left. Ms. Morris was stopped or stopping and Mr. Heinkel was not able to stop because he was negligently and carelessly driving too fast and inattentive. Mr. Heinkel's vehicle slammed into Ms. Morris's vehicle. Ms. Morris' vehicle was then forced into the vehicle in front of her causing impact. This collision was not only frightening but also caused

serious injuries to Ms. Morris. There was never any question that Heinkel was 100% at fault for the accident. Terminix was insured by Zurich for the liability of its employees including Mr. Heinkel for $5,000,000.

Ms. Morris, who was 37 years old at the time of the motor vehicle collision, sustained a variety of injuries, with the primary injury being a disk injury to her neck and lower back. After the accident, she received treatment for her injured neck and lower back. While Ms. Morris continued to treat her injuries, her attorney, Kevin Monsour, sent a settlement demand to Zurich on July 20, 2011 in the amount of $175,000. Although Zurich confirmed receipt of the settlement demand August 9, 2011, Zurich did not settle, counter or attempt in any way to respond in good faith to Ms. Morris's settlement demand. Ms. Morris, filed suit in Jefferson County Circuit Court on September 19, 2011.

As Morris continued to treat, her attorney filed suit against Heinkel and Terminix in September 2011. In September 2011 Zurich had information showing Morris had already incurred nearly $25,000 in medical expenses. After suit was filed, Morris continued treating including spinal block injections for her neck and lower back injuries.

## STANDARD FOR SUMMARY JUDGMENT

Fed. R. Civ. P. 56 requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant must support the motion with evidence admissible at trial in order to meet its initial burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party has the burden of showing the absence of a genuine issue as to any material fact. In a motion for summary judgment, the material relied upon to support a motion for

summary judgment must be viewed in the light most favorable to the non-moving party. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); 6 V. Moore, Federal Practice 56.15(3) (2d ed. 1966).

This Court is required to view the facts and evidence in a light most favorable to Ms. Morris as the non-moving party. A court should only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. V. Catrett*, 106 S.Ct. 2448 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 106 S.Ct. 2505 (1986). The facts should be viewed in a light most favorable to the party that is in opposition to the motion for summary judgment. *Matsushita Electrical industry Company, Ltd. v. Zenith Radio Corp.*, 106 S.Ct. 1348 (1986).

I.      **Motion for Summary Judgment must be supported by admissible evidence**

The standard for whether there is sufficient proof of bad faith violations of the Unfair Claims Settlement Practices Act is whether there is sufficient evidence from which a reasonable jury could conclude that the conduct of Zurich in adjusting and/or settling Morris' claim was either outrageous or constituted a reckless disregard of the rights of Morris. The evidence is more than sufficient for a jury to conclude that there was no reasonable basis for delaying the settlement of Morris' claim and that Zurich acted recklessly by failing to have in place any standards for the prompt investigation of claims.

A.      **Affidavit of Laura J. Stengl is not admissible evidence and should be disregarded**

An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. F.R.C.P. Rule 56 (c)(4). The affidavit of Ms. Stengl is not made upon personal knowledge and makes statements that are not supported by the record. Nor does she cite to the record to support her statements. Therefore, the affidavit cannot be considered to support defendants motion for summary judgment. *Davis v. Solid Waste Services, Inc.*, E.D.Pa.2014, 20 F.Supp.3d 519, affirmed 625 Fed.Appx. 104, 2015 WL 4978720.

Ms. Stengl, apparently a New York resident, submitted her affidavit that is notarized by a New York notary, to be admitted in a Kentucky court. However, her affidavit does not comply with the Kentucky statutory requirements, the "Uniform Recognition of Acknowledgments Act", in Ky.Rev.Stat. Chapter 423. Ky.Rev.Stat. § 423.130 (1) states that a notary "shall certify that the person acknowledging appeared before him and acknowledged he executed the instrument." The Stengl affidavit fails to certify she appeared before the notary [personally] and execute the instrument. The affidavit does not comply with Kentucky statutes and should not be considered to support Defendants' motion for summary judgment.

Ms. Stengl's affidavit and testimony has not been authenticated. In paragraph 6, Ms. Stengl makes the statement "Ms. Morris's tort case against Mr. Heinkel and his employer was genuinely disputed throughout." This statement is not true and not supported by admissible evidence to support this conclusion. Her signature is not dated as required by the act. Ms. Stengl fails to state facts that support this statement. This is simply an unsupported self-serving conclusory statement. This statement is inconsistent with the other evidence produced by defendants. Ms. Stengl does not state any facts to support or provide a

reasonable inference why the claims were genuinely disputed in good faith.

**B.  Ms. Stengl is not competent to testify about facts in her affidavit in 2008 when she was not an employee of Zurich (her employment began July 1, 2010)**

Ms. Stengl was not an employee of Zurich at the time of the accident in September 2008.  Her status as an employee began with Zurich July 1, 2010.[1]  Ms. Stengl states in paragraph 3 "the policy had a $5,000,000 liability limit and a $3,000,000 deductible as of the date of Ms. Morris's auto accident."  Ms. Stengl was not an employee as of the date of the accident on September 18, 2008 and she provides no facts laying the foundation or personal knowledge as required by the Kentucky Rules of Evidence Rule 602 or F.R.C.P. 56 (c)(4).  Ms. Stengl was assigned to the claim in question in 2008 but as an independent contractor on hire for the defendant.

In paragraph 4, Ms. Stengl comments about pre-litigation and post-litigation demand never exceeded $3 million.  Although this fact is undisputed, Ms. Stengl is not competent to to discuss any pre-litigation or post-litigation activity in the underlying suit.  Ms. Stengl provides no facts to support any personal knowledge of any litigation activity in the underlying suit, especially prior to her employment with Zurich.

In paragraph 5, although Ms. Stengl was a claims representative, she states that discovery proceeded in the above lawsuit in normal fashion.  Ms. Stengl does not provide any foundation how she as the claims representative is competent to discuss "discovery" or any aspect of litigation.  She is not an attorney nor does she state facts that give her foundation or personal knowledge to discuss the litigation of the underlying suit.  In the rest of paragraph 5, Ms. Stengl states "a settlement agreement was reached" but fails to provide facts to support

---

[1] Exhibit S, Public search on Kentucky Department of Insurance search on Laura Stengl, DOIID: 609504

her authority, personal knowledge to support this statement. Ms. Stengl's affidavit and statements are not based on personal knowledge and should therefore be disregarded in support of Defendants' motion for summary judgment. *Prout v. PRG Real Estate Management, Inc*., 51 F. Supp. 3d 702, at 707 (2014). *Pollock v. Pollock*, 154 F.3d 601, 612 n.20 (6th Cir. 1998).

**C. Ms. Stengl refers to interrogatories, part of litigation, to support a statement that "the tort case against Mr. Heinkel and his employer was genuinely disputed throughout." She fails to explain why Zurich refused to pay the claim forcing a lawsuit be filed to recover for her injuries. The responses to the interrogatories are not relevant to Zurich's bad faith settlement and should be disregarded.**

This is a bad faith settlement suit. This is not a bad faith litigation suit. Ms. Stengl is relying on litigation material, responses to interrogatories, to support why the case was disputed. Litigation material is irrelevant in a bad faith claim and should be disregarded. The responses to interrogatories are strictly part of litigation, not settlement. The Court should disregard the responses to interrogatories in the underlying personal injury suit to support defendants' motion for summary judgment in the present bad faith case.

The affidavit of Ms. Stengl does raise questions and provide an inference to support the bad faith settlement claims on behalf of Zurich in the underlying suit. Ms. Stengl does not say "**liability** was disputed." Ms. Stengl does not say "**coverage** was disputed." She states "the tort case" was disputed.

A reasonable juror could infer that Zurich violated the settlement practices in the underlying personal injury action by forcing the plaintiff to file an action in order to recover damages from injuries where coverage was not disputed and liability was not disputed. The fact that a tort case had to be filed in order to recover from injuries is a supports an inference of potential bad faith settlement. There were no settlement discussions or offers from Zurich

prior to the tort case being filed nearly three years after the accident happened.  As a matter of fact, Zurich had simply closed the claim file and was doing nothing.[2]

Ms. Stengl refers in paragraph 6 that the *case* was genuinely disputed.  Ms. Stengl does not provide facts supporting why it was disputed or facts to support it was disputed in *good faith*.  Further, Ms. Stengl fails to mention that Ms. Morris's original written demand in a letter dated July 20, 2011 was for $175,000 and supported by medical documentation. This demand was prior to the lawsuit being filed September 19, 2011.  A reasonable juror could infer that Zurich acted in bad faith in the underlying suit by not responding to the written demand to settle in the amount of $175,000 prior to suit being filed.[3]

The amount of the damages listed in interrogatories compared to the amount actually settled with the insurer is irrelevant except that the original demand was not more than the policy limits of $5,000,000.   Therefore, Zurich could not argue demands were above the policy limits.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge…The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Liberty Lobby, Inc.* at 2513 (internal citation omitted); see also *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041-42 (6th Cir. 1992) (citing *Liberty Lobby*).

Ms. Stengl affidavit states she was assigned as the claims representative in April 2012.  The inference here is either Zurich never assigned a claims representative to the claim until 2012 or she was one of many claims representatives assigned from the period of

---

[2] Declaration of Melissa Morris in support of Objection to Defendants' Motion for Summary Judgment
[3] Exhibit L, Settlement Letter dated July 20, 2011

September 2008 until April 2012. Was Ms. Stengl the first? Was she the fifth claims representative? This statement although not admissible and cannot be used to support defendants' motion for summary judgment, does raise an issue of fact of when Zurich assigned a claims representative and how many claims representatives were rotated or assigned to the claim. A reasonable juror could infer Zurich acted in bad faith in assigning multiple claims representatives who never engaged in an settlement discussions in good faith in the underlying claim.

**II.    Zurich is not entitled to summary judgment.**

> **A. Summary judgment is inappropriate in UCSPA claims when reasonable inferences from the evidence support a finding of bad faith.**

Kentucky's Supreme Court has developed a three-part test for analyzing whether an insurer's conduct constitutes bad faith.

> (1) The insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.
>
> *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (citing *Federal Kemper Insurance Company v. Hornback,* 711 S.W.2d 844, 846-847 (Ky. 1986) (Leibson, J., dissenting)).

The tort of bad faith under the UCSPA applies equally to third party claimants such as Morris as it does to first-party policyholders. "If a first-party carrier can be sued for bad faith, there is no reason why a third-party carrier cannot also be sued. " *State Farm Mut. Auto Ins. Co. v. Reeder,* 763 S.W.2d 116, 118 (Ky. 1988). The tort "applies to a claim of bad faith made by an insured against an insurance company." *Wittmer* at 890. Kentucky generally recognizes four types of "bad faith" claims, one of them being a third-party bad

faith claim for violation of the UCSPA. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526-27 (6th Cir. 2006).

While all of the various types of bad faith claims are analyzed under the three-part test stated in *Wittmer*, claims arising under the UCSPA are different from other types of bad faith claims because the UCSPA sets forth very specific duties by which insurers must abide. "[T]he statue does not lay out an amorphous, non-specific duty. Instead, it proscribes a list of particular acts and practices." *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006). Compliance with these particular duties is of utmost importance. The UCSPA is designed to "protect the public from unfair trade practices and fraud." *Reeder* at 118. "The KUCSPA is part of a large statutory scheme entitled, the "Insurance Code." The Insurance Code regulates the insurance industry, and an insurance company derives its right to do business in Kentucky from the Code." *Farmland Mut. Ins. Co. v. Johnson*, 36 S.wW.3d 368, 380 (Ky. 2000).

## LAW AND ARGUMENT

I. **Zurich American Insurance Company and Zurich American Insurance Company of Illinois are both parties to these documents and are jointly and severally liable**

On the "In Witness Clause" page of the policy, bates stamped Z 0767, produced by Defendants, it states "we agree with you to provide insurance as stated in this policy. The document is signed by Thomas A. Bradley, President Zurich North America. The list of company entities included under his signature include Zurich American Insurance Company and Zurich American Insurance Company of Illinois. Both companies are authorized to conduct the business of insurance in Kentucky. Both companies sell insurance products contained in the many policy documents and endorsements provided by defendants. Zurich American Insurance Company is listed at the top of the policy documents as the issuer.

Zurich American Insurance Company of Illinois is probably listed as a party guaranteeing payments of claims pursuant to the insurance policy. Because defendants have not provided all effective contracts that govern this policy, plaintiff does not have the benefit of referring to the specific portions or pages. The issuer of the policy is one role in this transaction. There are other agreements not provided by Defendants showing obligations, reinsurance entities and excess liability.

**II.      Zurich is collaterally estopped pursuant to 28 U.S.C. § 1738 from claiming it had no duty to pay a claim it has already paid. This issue has already been litigated, settled and Zurich paid.**

The underlying personal injury action in Kentucky state courts already addressed the issue of a contractual duty to pay and liability. The judicial proceedings and the settlement in the underlying personal injury suit precludes Zurich from relitigating claims or issues that were already litigated, or could have been litigated in the underlying suit**.** 28 U.S.C. § 1738. U.S. Constitution, Article 4 § 1; *Hall v. Equity National Life Ins. Co.,* 730 F.Supp.2d 936 (E.D.Ark.2010).

Zurich paid for Ms. Morris vehicle damage in 2008 because it had a duty to pay. Zurich paid for claims for property damage for Laura Benzel because they had a duty to pay. Zurich paid minor amounts for bodily injury claims to Laura Benzel and her minor child, AB, because they had a duty to pay. Zurich paid for the property damage to the vehicle of the insured, Edgar Heinkel because they had a contractual duty to pay. Zurich settled Ms. Morris's bodily injury claim September 2015 for less than the policy limits because the contractual duty to pay. Ms. Morris's insurer at the time of the accident filed a subrogation claim to be reimbursed from Zurich. There was no dispute on liability. There was no claim that Zurich was not obligated to pay pursuant to the terms of the contract. Because Zurich

has already paid damages claims on four vehicles and at least three different bodily injury claims, Zurich is estopped from now claiming there was no contractual duty to pay the claim. There is a presumption that Zurich cannot overcome.

The question is could a reasonable jury conclude that Zurich was obligated to pay the underlying tort claim based on the policy and the fact that Zurich already paid and settled the underlying tort claim? The answer is a resounding yes. This Court should deny defendants' motion for summary judgment on the issue of duty to pay or as a matter of law, order that Defendants are collaterally estopped from further litigating this issue because they did pay and the contract, the terms of the policy, is clear.

### III.
### IV. Zurich had a contractual duty to pay Ms. Morris's underlying tort claim against Edgar Heinkel and his employer Terminix pursuant to the terms of the policy.

Zurich American Insurance Company issued to The ServiceMaster Company Zurich had a contractual duty to pay claims made against the policy up to $5,000,000. The declarations together with the common policy conditions, coverage part declarations, coverage part forms, forms and endorsements, if any issued to form a part thereof, complete the policy BAP 2938657-03.[4] The policy is not in dispute. Mr. Edgar Heinkel was an "insured" as defined within the policy. This is not in dispute. The portion that defendants claim that is in dispute is the effect of the $3,000,000 deductible. Defendants claim the $3,000,000 deductible "effectively" made the ServiceMaster Company self-insured. However, insurance is governed by contract law, state statutes, and regulations. The $3,000,000 deductible does not remove Zurich's contractual obligation to pay under the terms of the policy.

---

[4] Exhibit B, BAP Policy 2938657-03

Zurich is the insurer of record for The ServiceMaster Company and subsidiaries. Zurich keeps the insureds compliant with all financial responsibility laws for auto insurance including The Motor Carrier Act of 1980. The deductible endorsement (Form U-CA-388-A (07-94)) clearly states "This endorsement applies between you [ServiceMaster] and us [Zurich]. You will reimburse us for deductible amounts that we pay on your behalf."[5] The endorsement applies to BUSINESS AUTO COVERAGE and MOTOR CARRIER COVERAGE. By this endorsement, Zurich is contractually obligated to pay claims and ServiceMaster is contractually obligated to reimburse Zurich for deductible amounts paid by Zurich as insurer, reinsurer, or excess liability insurer.

Based on this type of commercial policy, there is more than likely a fronting agreement between Zurich and The ServiceMaster Company. Fronting has been defined as the use of a licensed, admitted insurer to issue an insurance policy on behalf of a self-insured organization or a captive insurer without the intention of transferring any risk. The risk of loss is retained by the self-insured or captive insurer through an indemnity or reinsurance agreement. However, the fronting company (Zurich) would be required to honor the obligations imposed by the policy if the self-insured or captive failed to indemnify it. Therefore, the fronting company is subject to credit risk as a result of the arrangement, and fronting companies charge a fee for this service.

Fronting agreements allow companies like The ServiceMaster Company to comply with financial responsibility laws imposed by many states that require evidence of coverage written by an admitted insurer, like Zurich, such as for auto liability and workers compensation insurance.

_____

[5] Exhibit O, deductible endorsement Form U-CA-388-A (07-94)

Fronting agreements may also be used when business contracts with other organizations, such as leases, service contracts, and construction contracts, require evidence of coverage through an admitted insurer. The insured may face a contractual requirement that stipulates the use of insurers that meet a minimum financial rating to issue the insurance policy for a particular risk. By utilizing a fronting insurer like Zurich, the certificates of insurance, as well as the policies, would be issued utilizing the name/paper of the fronting company, thereby meeting the contract's requirements.

In this particular policy, the MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY, FORM MCS-90, fulfills this federal regulation. This endorsement states "this insurance is primary and the company [Zurich] shall not be liable for amounts in excess of $5,000,000 for each accident." However, the deductible endorsement of $3,000,000 applies to this policy as well. Hence, for any amounts that Zurich pays on behalf of the insured up to the deductible of $3,000,000, the ServiceMaster Company shall reimburse Zurich. There is more than likely an agreement between Zurich and The ServiceMaster Company to protect Zurich. Zurich more than likely required an evergreen letter of credit or some type of collateral agreement based on Zurich's actuarial determination based on projected loss. The fronting agreement more than likely includes claims handling on behalf of The ServiceMaster Company, filing the mandatory documents with regulatory agencies such as MCS-90, and other evidence of auto liability coverage to show compliance with financial responsibility laws.[6]

Defendants cite several cases to support their argument that Zurich was not obligated to pay the underlying tort claim. In *Daugherty v American Express Company*, the Plaintiff

---

[6] Exhibit P, MCS-90, Bates stamped Z 0987-0988

filed a breach of contract/coverage claim and a bad faith claim against American Express and HealthExtras regarding an accidental disability policy both defendants had marketed to plaintiff. However, neither was the issuer of the policy. The issuer was Federal Insurance Company. The plaintiff had entered into a contract with Federal, filed a claim and was denied. The court held that without a contractual duty to pay, there can be no bad faith. The plaintiff did not even add the party with the contractual duty to pay. A more appropriate cause of action against the named defendants probably fell in unfair and deceptive advertising. This case is distinguished from the present case before this Court. Zurich had a contractual duty to pay and did pay the underlying claim.

Defendants next rely heavily on *Davidson v. American Freightways, Inc.* to support the argument that defendants were self-insured. In Davidson, two tractor-trailer rigs, one owned by American Freightways, Inc. (AFI) and operated by its employee, William C. Jackson, and the other owned by Joseph Davidson and operated by Thomas Davidson. At the time of the accident, AFI was insured by a liability insurance policy issued by Protective Insurance Company. The policy contained a $250,000 deductible; and AFI investigated, negotiated, litigated, and ultimately paid those claims directly with his own money. At the trial on the tort claims, the Davidsons were granted a directed verdict on the issue of liability and the jury awarded them damages in the sum of $71,143.27. The Davidsons then filed the bad faith claim pursuant to Kentucky's Unfair Claims Settlement Practices Act (the UCSPA). *Davidson* is distinguished from the present case before this Court. In *Davidson*, the defendant American Freightways, Inc., an interstate trucking company, investigated, negotiated, litigated, and ultimately paid those claims (within the $250,000 deductible limit) with its own money. The divided Kentucky Supreme Court determined that the UCSPA only

applied to persons or entities "who are engaged…in the business of entering into contracts of insurance." KRS 304.1-040. American Freightways is distinguished from the present case because Zurich, the insurer, investigated, negotiated, litigated, and ultimately paid the underlying claim under the policy. The underlying claim was within the $3,000,000 deductible. ServiceMaster was then obligated to reimburse Zurich.

The analogies drawn by Defendants comparing AFI to ServiceMaster is completely misguided. ServiceMaster was contractually obligated to reimburse Zurich up to the $3,000,000 deductible. AFI was not contractually obligated to any party for reimbursement. AFI, an interstate trucking company, had its own Property and Casualty Claims Department with a director, adjusters and investigators. AFI is not applicable to the present case before this Court. The deductible does not remove Zurich's duty to pay pursuant to the policy terms. The policy terms mandate Zurich pay and then seek reimbursement from its insured.

*Davidson* was decided by six judges; Justice Cooper delivered the opinion with Justice Graves and Justice Keller concurring. Justice Wintersheimer dissented by separate opinion with Justice Lambert and Justice Stumbo joining the dissent. The dissent characterized AFI as a self-insurer rather than a self-insured and would have reinstated the bad faith claim.

The next case defendants cite to support their argument is *Delamar v. Mogan*, 966 F. Supp. 2d 755 (2013). This case is inapplicable to the present case. This case is premised on a fraudulent joinder of a party to defeat diversity jurisdiction. *Delamar* is a first party breach of contract and bad faith settlement claim against his property insurer and the agent of the third party adjusting company hired to investigate the claim. The *Delamar* court determined that the agent of the third party adjusting company that was hired to investigate the claim did

not have a contractual duty to pay the claim. Therefore, the agent of the adjusting company could not be personally liable for bad faith settlement claims and should not have been joined as a party defendant.

The *Delamar* court did not analyze whether the adjuster, acting as the agent for the insurer, could trigger liability on behalf of the insurer. Either way, the third-party claims adjuster should not have been joined as a personally liable party. *Delamar* is not helpful on the issues in the present case. In the present case, Zurich has not alleged that Ms. Morris named an adjuster. Although Zurich claims it was never obligated to pay the underlying claim, Zurich has offered no explanation why they did pay. Perhaps Zurich was feeling rather charitable seven years later after Ms. Morris filed a complaint with the Kentucky Department of Insurance alleging unfair settlement claims on behalf of Zurich?

## V. ServiceMaster company was not self-insured pursuant to the Kentucky Insurance Code

A quick review of the Kentucky Department of Insurance site http://insurance.ky.gov/Company/Default.aspx to search the insurer directory, choosing "entity type" as "Motor Vehicle Liability Self Insured" produces results that do not include The ServiceMaster Company or any of the named parties in the underlying tort case.



The results are attached as Exhibit Q. The ServiceMaster Company is not listed.  The ServiceMaster Company is not a qualified self-insured in Kentucky.  When Defendant claims in its argument that the policy had a $3,000,000 *liability* deductible vs. a $3,000,000 deductible, this difference is significant.  A *liability* deductible is prohibited pursuant to KRS 304.39-080 and 304.14-130 unless the policy language states the insurer SHALL pay on behalf of the insured or unless the insured is a qualified self-insured.  A qualified self-insured registers properly with the state and provides the proper assurances to fulfill its obligations under the financial responsibility laws.  The ServiceMaster Company is not self-insured (or a self-insurer) pursuant to the statutory Kentucky laws, regulations and The Insurance Code.

The policy at issue states that Zurich must pay on behalf of the insurer. The contract makes the ServiceMaster Company compliant with Kentucky financial responsibility laws. To argue Zurich was not contractually obligated to pay is to argue that The ServiceMaster

Company was not compliant with the financial responsibility laws. *Davidson* does not support defendants claim that ServiceMaster was "self-insured" relieving Zurich from a contractual duty to pay. Ms. Morris has not sued ServiceMaster for bad faith settlement claims. Ms. Morris sued Zurich, an insurer who is under a contractual duty to pay the underlying claim. Zurich is in the business of insurance. Zurich was responsible for the settlement claims and contractually obligated to pay the claim. The UCSPA applies to Zurich and the case before the Court.

**VI. Zurich was not ServiceMaster Company's third-party claims handler**

Zurich may have had an agreement, through the fronting agreement with The ServiceMaster Company, to provide third-party claims handling. However, Defendants have not produced any contracts to support the argument that Zurich's contractual duties were limited to merely third-party administration and excluding its role as insurer. In a motion for summary judgment, the movant is required to support any claims or defenses with admissible evidence. Other than a mischaracterization of the contractual relationship, this claim fails to prove Zurich was not obligated to pay the underlying tort claim that Zurich actually paid. Zurich was the issuer of the policy, not just the third-party administrator.

Analyzing part one of the three-part *Wittmer* test whether an insurer's conduct constitutes bad faith, Zurich had a contractual duty to pay Ms. Morris's underlying tort claim against Edgar Heinkel and his employer under the terms of the policy. Part one, the contractual duty to pay has already been decided through Zurich's settlement and payment in the underlying suit. This part is met.

Defendants cite to *Prout v. PRG Real Estate Management, Inc*., 51 F. Supp. 3d 702 (2014) to support their defense that Zurich was merely a third-party administrator for

ServiceMaster. In *Prout*, the plaintiff filed a premises liability claim against the owner and operator of her apartment complex, PRG Real Estate Management, Inc. and ESIS, Inc., the third-party administrator for PRG's self-insurance plan. ESIS filed a motion for summary judgment and as a defense claimed it was only the third-party administrator and attached a "risk management services agreement" to support the defense. Zurich has attached no such contract to support a defense showing (1) they were under no contractual duty to pay and (2) Zurich was merely and only a third-party claims administrator. *Prout* does not support Zurich's position. The majority of the analysis in *Prout* was the one-year statute of limitations and conduct that would toll the statute of limitations. Neither of these issues is present in the case before this Court.

The last case defendants rely on to support their argument is *Madison v. Nationwide Mut. Ins. Co.*, 2012 WL 692598 (W.D. Ky.). This facts in this case are very similar to *Delamar v. Mogan*. The memorandum order and opinion analyzes plaintiff's motion to remand after defendant removed the case from state court to the district court. The plaintiff Madison sued his insurer Nationwide and one its in-house adjusters, Charlie Stevens, for bad faith settlement practices after a jury verdict in his favor when he sued his insurer under his uninsured policy provision. This Court found that Stevens was fraudulently joined and he was dismissed. Stevens, an in-house adjuster, was not a party who was contractually obligated to pay the claim. Ms. Morris has not named any defendants who are not obligated to pay under the policy. Ms. Morris assumed that all employees or independent contractors were simply agents of Zurich and all actions or inactions were sanctioned by Zurich.

Zurich claims "Zurich American never had an obligation to pay Morris's underlying tort claims." However, Zurich does not explain why they <u>did pay</u> the underlying tort claims

if Zurich honestly believed they never had an obligation to pay. Zurich paid in excess of $100,000 to settle the claim and they have never claimed Zurich was not contractually obligated. Further, Zurich has never explained why they failed to engage in settlement discussions prior to June 2015, seven years after the motor vehicle accident.

**VII.    Liability of the underlying tort claim was never "in dispute" or "always genuinely disputed."  It was clear from the day of the accident in 2008 Zurich's insured, Mr. Edgar Heinkel was at fault.  The claim was "beyond dispute" and adverse to Zurich.**

Defendant again makes conclusory statements unsupported by facts or admissible evidence that the underlying claim was "genuinely disputed."  Defendants cite *Coomer v. Phelps*, 172 S.W.3d 389 at 394 (Ky. 2005) to support Kentucky law only requires insurers to pay claims "for which liability is beyond dispute."  *Coomer* supports Ms. Morris's claim that Zurich should have paid her claim when she tendered a written demand to settle the claim for $175,000 in the July 20, 2011.  In *Coomer*, after accompanying Phelps to dinner, Coomer was injured when her left knee was struck by Phelps's car. There was no question as to Phelps's liability for the accident. Coomer was treated that same night at the local hospital and was diagnosed with a bruised knee by the emergency room physician. She was sent home from the hospital with a prescription for Tylenol–3, which contains codeine, for her pain. The next day Phelps reported the accident to his insurer, Progressive.  The same day a representative of Progressive contacted Coomer to settle her bodily injury claim against Phelps.  The agent offered $250 in exchange for a full release.  Coomer rejected the offer but telephoned the agent later the same day stating she would accept a $500 settlement.  The agent secured her release and tendered payment of $500 for full release in favor of Phelps and Progressive that day.  What can best be described as "settlement remorse" by Coomer, she filed suit nearly a year later attempting to have the settlement release set aside and

claiming bad faith on behalf of the insurer for settling the claim so quickly when liability was ***beyond dispute***.  Coomer does not support Zurich's refusal to pay or settle the claim in the present case for nearly seven years.  Liability on behalf of Zurich's insured was ***beyond dispute***.  Yet, Zurich never engaged in settlement discussions in good faith until nearly seven years after the motor vehicle accident.[7]

Defendants rely on *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.,* 732 F.3d 645 (6th Cir. 2013) to support its position to litigate the claim.  The United States Court of Appeals for the Sixth Circuit, applying Kentucky law, has recognized that an insurer can raise ***coverage*** disputes without opening itself up to a bad faith claim. In that case, an employee of Youth Alive, a nonprofit corporation that provided services to at-risk youth, asked a sixteen-year-old to transport four children back to their homes from a Youth Alive event. *Id.* Unbeknownst to the employee, the sixteen-year-old did not have a driver's license and the car he was driving was stolen. *Id.* at 648. In a police pursuit following a traffic stop, the young driver crashed the vehicle, killing all four children. When the children's estates brought suit, Philadelphia Indemnity underline provided a defense to Youth Alive but filed a declaratory judgment seeking a determination that Youth Alive's insurance policies did not provide coverage for the claims because the sixteen-year-old driver was a "volunteer worker" or a "club member," bringing into play a specific policy exclusion. *Id.*

Youth Alive filed a bad faith counterclaim against Philadelphia Indemnity contending that the insurer's coverage positions had no reasonable basis in law or fact and that the insurer violated the common law duty of good faith and the UCSPA. *Id.* Ultimately, Philadelphia Indemnity settled the estates' wrongful death claims against Youth Alive, and the district

---

[7] Declaration of Melissa Morris

court dismissed Youth Alive's bad faith claims based on its determination that Philadelphia Indemnity's coverage position was reasonable and had not been taken in bad faith. *Id.* at 649. The Sixth Circuit affirmed the dismissal, explaining that Youth Alive had failed to demonstrate that Philadelphia Indemnity lacked a reasonable basis in law for contesting coverage under both policies. *Id.* at 651.

Zurich misconstrues the holding and reasoning of *Philadelphia Indemnity* by suggesting that it stands for the proposition that an insurer can raise coverage disputes, or no "contractual duty to pay", without opening itself to a bad faith claim. On the contrary, *Philadelphia Indemnity* indicates that whether bad faith liability exists is predicated on the reasonableness of the insurer's conduct—namely was there a "genuine dispute" as to the pertinent facts or law. *Id.* at 650 (citing *Empire Fire,* 880 S.W.2d at 889-90). In particular, "a bad faith claim is precluded as a matter of law as long as there is room for reasonable disagreement as to the proper outcome of a contested legal issue," but where the insurer's coverage obligation is not fairly debatable seeking to avoid coverage through a declaratory judgment claim can expose the insurer to a bad faith claim. *Id.* In *Philadelphia Indemnity,* the coverage dispute focused on the application of specific policy language to the facts and the courts ultimately determined that the insurer's "position regarding the policy language was reasonable," *i.e.,* its position that the sixteen-year-old driver was a "volunteer worker" and hence an "insured" whose operation of the vehicle was excluded from coverage was reasonable. *Id.*

In the present case, Zurich has never claimed it had no statutory duty to pay under the policy until this motion for summary judgment was filed on February 1, 2018. Zurich actually paid the underlying claim in order to settle the claims against the named defendants

in the underlying claim prior to a trial. The underlying tort case was not fairly debatable in law or in facts. Coverage was not disputed. Liability was not disputed. The insured party, Mr. Heinkel, stated he was inattentive. Zurich was aware that "liability was adverse."[8] He reported that he was unable to stop, striking Ms. Morris's vehicle and pushing Ms. Morris into Ms. Brenzel.

On September 26, 2008, the claim file reflects the following facts: "This is an auto liability claim; vehicle is company owned; driver permissive user; insured carries $5 mil with $3 mil deductible; no endorsements, conditions or exclusions apply; liability symbol 1 any auto." It further states: " CORPORATE PROTOCAL $20k reserve advisory; $20K – settlement authority; $50K authority requires 30 day notice." The entry before this state "NEW KY AL LOSS; TMX was driving around a curve behind clmt 1. When clmt 1 came to a sudden stop – TMX was unable to stop in time hitting clmt 1 in the rear – pushing clmt 1 into clmt 2.[9]

Although defendants were on notice of the undisputed policy, undisputed liability, the standard settlement authority, defendants never engaged in any settlement discussions. Zurich actually closed the file in 2009. Zurich reopened file after it received a subrogation claim from Ms. Morris's auto insurance regarding PIP payments. Zurich conceded liability and filed no response to the subrogation claim through the Kentucky Insurance Arbitration Association.

Zurich has no admissible evidence to support a conclusory statement that the claim was "fairly debatable" to support why Zurich "refused to pay the claim." Zurich's own

---

[8] Exhibit D, bates stamped Z 1021
[9] Exhibit R, Defendants' productions of document, bates stamped Z 1029

characterization is very accurate. Zurich "refused to pay the claim." Zurich was non-responsive or so low in any response to settlement requests, none of the responses can be characterized as "in good faith." Zurich was either non-responsive or requested more documentation. Morris settled her claims against the named insured but refused to release Zurich or any insurers as released parties to reserve any claim for bad faith. Zurich mischaracterizes the standard of element three of *Wittmer* as Ms. Morris must prove that Zurich American acted intentionally or with reckless disregard of her rights in "refusing to pay her tort claims" before they were paid. A recent decision from the Supreme Court of Kentucky supports the evidence presented by Ms. Morris creates jury questions of insurer's bad faith. *Indiana Ins. Co. v. Demetre*, No. 2015-SC-000107-DG, 2017 WL 3635500, at *21 (Ky. Aug. 24, 2017).

## CONCLUSION

Zurich is collaterally estopped from claiming that Zurich was not contractually obligated to pay under the clear and unambiguous terms of the policy. Zurich did pay the claims. However, because Zurich has offered no legitimate reasons to justify why the claims were not settled or paid for seven years and only after Ms. Morris filed a complaint with the Department of Insurance, Zurich's actions in handling the claim raises fact issues that are only appropriate for a jury. Coverage was not disputed. Liability was not disputed. Damages were never attempted to be settled on behalf of Zurich in good faith. There are genuine issues of material facts that are only appropriate for a jury. There is sufficient evidence from which a reasonable jury could conclude that the conduct of Zurich in adjusting and/or settling Morris' claim was either outrageous or constituted a reckless disregard of the rights of Morris. Therefore, defendants Motion for Summary Judgment should be denied.

Respectfully submitted,

Melissa Morris, pro se


BY:    _s/Melissa Morris_____
Melissa Morris, pro se
404 James Robertson Pkwy, Suite 102
Parkway Towers Building
Nashville, Tennessee 37219
Phone: (615) 502-2386

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of February 2018, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

BOEHL STOPHER & GRAVES, LLP
Robert E. Stopher
400 West Market Street, Suite 2300
Louisville, KY 40202
Phone: 502-589-5980
Fax: 502-561-9400
Email: rstopher@bsg-law.com
Counsel for defendants

BY:  \_s/Melissa Morris_____
Melissa Morris, pro se
404 James Robertson Pkwy, Suite 102
Parkway Towers Building
Nashville, Tennessee 37219
Phone: (615) 502-2386